IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MELVIN BROADOUS,

                Plaintiff,

v.

NICHOLAS MORALES, JOHN DOE, and CITY
OF PORTLAND,

                Defendants.

Case No.: 3:21-cv-00771-AN

OPINION AND ORDER

Plaintiff Melvin Broadous brings civil rights claims against defendants Officer Nicolas Morales ("Morales") and the City of Portland (the "City") (collectively, "defendants"). On April 13, 2023, defendants filed this Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a). The Court heard oral arguments from the parties on October 12, 2023. For the reasons set forth below, defendants' motion is GRANTED.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

1

The moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Id.* at 325. Instead, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. *Id.*; *see In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *Celotex*, 477 U.S. at 324.

## BACKGROUND

Because plaintiff is the non-moving party, the following facts are presented in the light most favorable to plaintiff. Plaintiff owns a vacant house in Northeast Portland (the "Property"). The Property has been uninhabited since July 2020 due to fire damage. After the fire, plaintiff secured the Property by boarding up the windows and screwing the doors shut. On the morning of August 16, 2020, plaintiff received a telephone call from his neighbor informing him that a man had been going in and out of the Property. Decl. of Marc Rodriguez ("Rodriguez Decl."), ECF [42], Ex. 2 ¶¶ 23:11-24, 25:11-23. Plaintiff asked the neighbor to call the police, and immediately drove from his Tigard, Oregon home to the Property. *Id.* ¶¶ 10:21-23. At approximately 7:27 a.m., plaintiff called the Portland Police Bureau ("PPB"). *Id.* ¶¶ 12:6-18. Plaintiff explained that his neighbor informed him of an active burglary at the Property, that he was currently en route to the Property, and requested that officers be sent there right away. *Id.* PPB Officer Morales and PPB Field Training Officer Mendoza ("Mendoza") (collectively, the "officers") were dispatched around 7:30 a.m. with information that plaintiff's neighbor had observed a suspicious individual looking into or going into the backyard. Decl. of Jorge Mendoza ("Mendoza Decl."), ECF [42], ¶ 7.

The officers arrived at the property around 7:35 a.m. and conducted a premises check within approximately eleven minutes. Decl. of Nicholas Morales ("Morales Decl."), ECF [42], ¶ 4. The officers checked the exterior of the Property, including the backyard, pulling on the boards covering the

windows in the back of the Property to confirm that they were secure, and checking the doors and windows to ensure that they were locked and secured. Mendoza Decl. ¶ 9. The officers concluded that there were no signs of criminal activity, forced entry, or anything else that indicated someone was inside the Property. *Id.* ¶ 10. The officers cleared the call and were dispatched to another call around 7:46 a.m. *Id.*

Plaintiff received a call from Morales assuring him that the Property was secured. Morales Decl. ¶ 9. Plaintiff asked the officers to stay at the Property until plaintiff arrived. Rodriguez Decl., Ex. 2 ¶¶ 13-14:9-11. However, Morales told him that the officers had already left, repeated that the Property was secured and "all clear," and advised plaintiff to call the officers upon arrival if he needed them to return. *Id.* ¶¶ 14:21-24.

Plaintiff arrived at the Property and noticed that the padlock securing his garage was lying on the ground, seemingly cut off with bolt cutters. *Id.* ¶¶ 15:2-3. Then, plaintiff saw third-party defendant Daniel Robert Rowland ("Rowland"), with items in hand, emerge from a basement window well of the Property that was covered by vegetation. *Id.* ¶¶ 14:16-18. The window well could only be seen when standing directly over the vegetation and pulling the vegetation away from the Property. Morales Decl. ¶ 12. Plaintiff called out to Rowland, who then began running with the items. Rodriguez Decl., Ex. 2 ¶¶ 19:18-23. Plaintiff pursued Rowland for approximately a full city block until Rowland turned and began to swing items at plaintiff. *Id.* ¶¶ 19-20:24-24. Plaintiff then dove at Rowland and the two engaged in a fight for approximately fifteen to twenty minutes. *Id.* ¶¶ 22:19-20. Plaintiff's domestic partner, who had accompanied him to the Property, called 911 to report the altercation. *Id.* ¶¶ 22-23:19-4.

At 8:06 a.m., the officers were again dispatched to the Property, where they found plaintiff pinning down Rowland. Mendoza Decl. ¶ 11. As a result of the altercation with Rowland, plaintiff suffered bruises, injuries to his shoulders, an ankle injury, anxiety, and cardiac effects.

Plaintiff filed the present action against defendants on May 19, 2021. Plaintiff alleges three claims: (1) a Fourteenth Amendment due process claim against Morales; (2) a *Monell* failure to train claim against the City; and (3) a state-law negligence claim against all defendants. Defendants filed the present motion on April 13, 2023, seeking summary judgment on all three claims.

## DISCUSSION

**A.    First Claim for Relief: Substantive Due Process Violation Against Defendant Morales**[1]

"Substantive due process protects individuals from arbitrary deprivation of their liberty by [the] government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006).  "[T]o establish a constitutional violation based on substantive due process, [a plaintiff] must show both deprivation of her liberty and conscience-shocking behavior by the government." *Id.*

1.    *Constitutionally Protected Liberty Interest*[2]

a.    Statutorily Conferred Right

Plaintiff relies on Oregon Revised Statute ("ORS") § 161.225 to create a constitutionally protected liberty interest.  The statute, in relevant part, provides:

> "A person in lawful possession or control of premises is justified in using physical force upon another person when and to the extent that the person reasonably believes it necessary to prevent or terminate what the person reasonably believes to be the commission or attempted commission of a criminal trespass by the other person *in or upon the premises*."

*Id.* § 161.225(1) (emphasis added).  While a liberty interest may be created by state law, a mere violation of state law alone cannot provide for a section 1983 cause of action.  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 455 (1989); *see Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365 (9th Cir. 1998) (acknowledging that "state law violations do not, on their own, give rise to liability under § 1983").  "'[A] State creates a [constitutionally] protected liberty interest by placing substantive limitations on official discretion.'" *Thompson*, 490 U.S. at 462 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)).  For example, "the most common manner in which a State creates a liberty interest is by establishing 'substantive predicates' to govern official decision-making . . . and, further, by mandating the outcome to be reached

---

[1] It's unclear whether plaintiff pleads a substantive or procedural due process claim, or both.  Plaintiff frames his § 1983 claim as one dealing with a violation of his substantive due process rights but then directs the Court to cases that only deal with procedural due process rights.  Because plaintiff frames his § 1983 claim as a substantive due process claim, the Court will address the claim only under a substantive due process analysis.

[2] The Court declines to address the second element of a substantive due process claim because plaintiff's claim fails on the first element and because plaintiff does not address the second element in his response.  However, even if plaintiff could meet the first element, plaintiff likely cannot show that the second element is met because conduct that is negligent, careless, and even reckless fails to meet the mental intent element required to state a substantive due process claim.  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998).

upon a finding that the relevant criteria have been met." *Id.* (citation omitted).  "To create the necessary 'substantive predicates,' 'the state law at issue must provide more than merely procedure, it must protect some substantive end.'" *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1156 (9th Cir. 2012) (quoting *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995)).

Here, however, the Court need not reach the question of whether ORS § 161.225 creates "substantive predicates" such that it confers a liberty interest upon Oregon citizens because plaintiff was not exercising his statutory right when he used physical force against Rowland.  ORS § 166.255(1) confers the right to prevent or terminate an attempted, or actual, criminal trespass.  However once Rowland left the premises, the commission of criminal trespass was complete.  Thus, when plaintiff used physical force on Rowland a full city block away from the Property, plaintiff was not attempting to prevent or terminate a criminal trespass occurring on his property; rather, he was attempting to prevent theft.  *Compare* Or. Rev. Stat. § 164.255(1)(a) (defining criminal trespass in the first degree as a person who "[e]nters or remains unlawfully in a dwelling") *with* Or. Rev. Stat. § 164.015(1) (defining theft as when a person "[t]akes, appropriates, obtains or withholds [ ] property from an owner").  Therefore, plaintiff was not deprived of any rights under ORS § 166.225(1).

b.      Protection from Third-Party Harm

It is well established that "members of the public have no constitutional right to sue state employees who fail to protect them against harm inflicted by third parties." *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992); (*see Nieves v. Cnty. of Trinity*, No. 2:22-cv-00270-KHM-AC, No. 2:21-cv-02248-KJM-AC, 2022 WL 17994367, at *6-7 (E.D. Cal. Dec. 29, 2022) (describing Constitution as "a charter of negative liberties").  The Constitution "creates areas in which the government has to let people alone; it does not entitle them to demand services, such as police protection." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000).  Said differently, the Due Process Clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).  In turn, the Fourteenth Amendment and Civil Rights Act of 1871 "did not create a system by which police departments are generally held financially

accountable for crimes that better policing might have prevented." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768-69 (2005).

However, a constitutional right to protection against violence committed by third parties is available in two scenarios. First, there may be a duty to protect if there is a special relationship between the plaintiff and the state, such as a custodial relationship. *See DeShaney*, 489 U.S. at 198-200 (noting that duty to protect in custodial context arises from limitations imposed on individual by state, not state's awareness of individual's predicament). In the present case, plaintiff has not and cannot allege a special relationship.

Second, a state actor may have a duty to protect a plaintiff that the state actor "affirmatively place[s] . . . in danger . . . by acting with 'deliberate indifference to [a] known or obvious danger.'" *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006) (quoting *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)) (hereinafter "*Grubbs 2*") (citation omitted, alteration in original); *see Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974-75 (9th Cir. 2011) (discussing deliberate indifference standard). Under the state-created danger exception, a plaintiff must present evidence that the government actor's affirmative actions created or exposed plaintiff to an "actual, particularized danger" that he "would not otherwise have faced." *Kennedy*, 439 F.3d at 1061, 1063. "Deliberate indifference" exists in "completely controlled situation[s] in which [a government actor has] committed an obvious and easily detectable mistake . . . that they had time to detect and correct" but demonstrably failed to care about correcting. *Porter v. Osborn*, 546 F.3d 1131, 1139 (9th Cir. 2008). The doctrine requires a plaintiff to establish both that the "ultimate injury was foreseeable to the defendant" and that the government actor's actions created the actual, particularized danger. *Murguia v. Langdon*, 61 F.4th 1096, 1111 (9th Cir. 2023).

Plaintiff cannot allege that the state-created danger exception applies because he has failed to offer evidence that the officers' "deliberate indifference to a known or obvious danger" affirmatively placed plaintiff in danger that he "would not otherwise have faced." "Deliberate indifference is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Patel*, 648 F.3d at 974 (quoting *Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). This standard

is higher than gross negligence and requires a culpable mental state. *Id.* "The state actor must 'know[ ] that something is going to happen but ignore[ ] the risk and expose[ ] [the plaintiff] to it.'" *Murguia*, 61 F.4th at 1111 (quoting *Grubbs 2*, 92 F.3d at 900).

       Here, however, the officers did not know that Rowland was on the Property or that an attack was likely to occur. Indeed, they cleared the call for that very reason. Moreover, even if the officers had not conducted the premises check, plaintiff would have faced the same danger posed by Rowland because plaintiff was en route to the Property where Rowland was already located. Finally, plaintiff's decision to chase Rowland for a full city block and then fight him could not have been foreseeable by the officers. Thus, plaintiff cannot establish the state-created danger exception. Because plaintiff cannot establish a constitutionally protected liberty interest, or that he was entitled to protection from third-party harm, summary judgment on his substantive due process claim is appropriate.

       2.   *Qualified Immunity*

       "The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Wood v. Moss*, 572 U.S. 744, 757 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). It essentially "protects all but the plainly incompetent or those who knowingly violate the law." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (internal quotation marks omitted). Thus, even if the officers' conduct was questionable, their actions would be protected under qualified immunity because their conduct did not violate a clearly established right.

       "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). And while this inquiry "do[es] not require a case directly on point . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

       Here, plaintiff alleges that "[t]he initial steps taken by responding officers are critical to

protecting the interests in a person's property"; that "[f]ailing to properly respond to a burglary can have negative consequences, such as the consequences that occurred in this incident"; and that, to prevent the deprivation of plaintiff's property interests, "[a] reasonable officer would have understood that additional steps should have been taken to secure [plaintiff's] vacant house." These allegations are insufficient to prevent the application of qualified immunity.

        First, as discussed above, plaintiff has failed to show that he possessed a "clearly established" statutory or constitutional right of which a reasonable person would have known. Therefore, plaintiff has failed to establish a constitutional right violation. Plaintiff has not, and cannot, cite case law that clearly establishes a right to demand that officers stay on the site of a premises check after it has been cleared, or that it is unlawful to miss a basement window that is well hidden by overgrown vegetation. Indeed, qualified immunity is intended to prevent the very kind of claim that plaintiff brings here – a claim that seeks to hold law enforcement officers liable for harm caused by the criminal acts of a third party. Accordingly, summary judgment on plaintiff's substantive due process claim is GRANTED.

**B.**      **Second Claim for Relief:** *Monell* **Claim Against the City**

        Defendants move to dismiss plaintiff's second cause of action, a *Monell* claim against the City brought under 42 U.S.C. § 1983. "A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'" *Id.* (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

        A plaintiff may establish *Monell* municipal liability under § 1983 even where the municipality does not expressly adopt the alleged policy. *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003) (noting that liability may arise from constitutional violation pursuant to a longstanding practice or

custom).   There are three alternative ways such liability can attach: (1) "if an employee commits a constitutional violation pursuant to a longstanding practice or custom," *id.*; (2) "when the person causing the violation has final policymaking authority," *id.*; and (3) "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact[,]" *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).  Rather, the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* (emphasis omitted).  At the pleading stage, a plaintiff's *Monell* claim "'may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts'" to provide the opposing party with fair notice so that it can defend itself.  *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

      1.    *Failure to Train*

Plaintiff pleads only a failure to train theory.  "Failure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely." *Dougherty*, 654 F.3d at 900.  To successfully make a claim for failure to train, a plaintiff must show that (1) "the existing training program" is inadequate "in relation to the tasks the particular officers must perform"; (2) the officials have been deliberately indifferent "to the rights of persons with whom the police come into contact"; and (3) the inadequacy of the training "actually caused the constitutional deprivation at issue." *Merritt v. Cnty. of L.A.*, 875 F.2d 765, 770 (9th Cir. 1989) (internal quotation marks and citations omitted).

      a.    Deprivation of a Constitutional Right

As discussed above, plaintiff has not shown that Morales violated any of plaintiff's constitutional rights.  Thus, plaintiff's failure to train claim cannot succeed on this point alone.  *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that departmental regulations might have *authorized* [a constitutional

violation] is quite beside the point." (Emphasis in original)).

        b.        Deliberate Indifference

        However, plaintiff has also failed to show that the City's custom, policy, or practice amounted to deliberate indifference of plaintiff's constitutional rights. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." *Id.* at 61-62 (internal quotation marks omitted). "A less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities[.]" *Id.* at 62 (internal quotation marks omitted). Thus,

> "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability  Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."

*Id.* (internal quotation marks omitted).

        Plaintiff has offered no evidence to suggest that the City had notice of training deficiencies based on a "pattern of similar constitutional violations by untrained employees." Indeed, plaintiff has not even identified similar constitutional violations. The crux of plaintiff's argument falls on Morales' statement that "premise checks were only 'discussed'" during training, which he argues infers that the officers were not trained at all. Pl.'s Resp. in Opp. to Mot. for Summ. J. ("Pl.'s Resp."), ECF [46], at 8. However, without evidence of similar constitutional violations, or even that the officers' actions violated the Constitution at all, plaintiff cannot show that the City was on "notice," and therefore, deliberately indifferent. Therefore,

plaintiff has not alleged the deprivation of a constitutional right or deliberate indifference by the City sufficient to support a failure to train claim.

        2.     *Causation*

Even if plaintiff could sufficiently plead municipal liability, his *Monell* claim would still fail because he has not adequately pled causation. To sufficiently plead a *Monell* claim, a plaintiff must show that the government's policy, custom, or practice was the "moving force behind the constitutional violation he suffered." *Galen v. Cnty. of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007). The moving force element requires a showing of both causation-in-fact and proximate causation. *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013); *see Brown*, 520 U.S. at 404 ("[A] plaintiff . . . must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.").

Plaintiff argues that the City's failure to train its officers on how to properly secure, check, and clear a home upon a report of a burglar prior to allowing the homeowner to return and enter his home resulted in plaintiff's injuries. Pl.'s Resp. 9-10. However, any causal link alleged by plaintiff was broken by plaintiff's decision to chase Rowland one city block, tackle him, and engage in a physical altercation with him. Moreover, plaintiff fails to present evidence that the incident, i.e., the failure to conduct a proper premises check, was not isolated or sporadic. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents[.]"). Accordingly, summary judgment on plaintiff's *Monell* claim is GRANTED.

## C.    Third Claim for Relief: Negligence Against the City and Morales

Finally, plaintiff brings a state-law negligence claim against defendants. Unlike the *Monell* claim, which requires a higher showing of objective deliberate indifference, a negligence claim requires only a showing of unreasonableness by the officers. *See Sloan ex rel. Est. of Sloan v. Providence Health Sys.-Or.*, 364 Or. 635, 643, 437 P.3d 1097 (2019) (noting that, in ordinary negligence, plaintiff need only establish that conduct was unreasonable).

To successfully plead a common law claim for negligence, a plaintiff must show:

"'(1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk of harm

[was] to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.'"[3]

*Son v. Ashland Cmty. Healthcare Servs.*, 239 Or. App. 495, 506, 244 P.3d 835 (2010) (quoting *Solberg v. Johnson*, 306 Or. 484, 490-91, 760 P.2d 867 (1988), *abrogated by Deckard v. Bunch*, 358 Or. 754, 370 P.3d 478 (2016)).

Plaintiff argues that "the officers knew or had reason to know from the phone call from the neighbor and their training and experience that [plaintiff's] vacant house presented a risk of criminal harm or violence from unknown, third persons" and that by failing to properly secure the house and wait to assist plaintiff, they "created a foreseeable risk of harm." Pl.'s Resp. 12. In response, defendants argue that (1) they did not create a foreseeable risk of harm, (2) their conduct was objectively reasonable under the circumstances, and (3) plaintiff cannot establish a causal link between his injuries and defendants' conduct. Defs.' Mot. for Summ. J. ("Defs.' Mot."), ECF [42], at 29.

1. *Foreseeability and Unreasonableness*

A special status, relationship, or standard of conduct between the defendant and the plaintiff may create, define, or limit the defendant's duty to the plaintiff. *Or. Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or. 329, 340-41, 83 P.3d 322 (2004) (citing *Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1, 17, 734 P.2d 1326 (1987)); *see Donaca v. Curry Cnty.*, 303 Or. 30, 32, 734 P.2d 1339 (1987). Absent such a special status, relationship, or standard of conduct, a defendant's liability for harm that his or her conduct causes is analyzed in terms of "reasonable foreseeability," *Or. Steel Mills, Inc.*, 336 Or. at 340, or "general foreseeability," *Slogowski v. Lyness*, 324 Or. 436, 441, 927 P.2d 587 (1996).

---

[3] Defendants do not address elements two and five of plaintiff's negligence claim. Therefore, the Court considers these elements conceded. However, because plaintiff's negligence claim fails as pled, the Court does not address whether plaintiff's negligence and § 1983 claims are based on the same operative facts.

Here, plaintiff has not invoked any status, relationship, or standard of conduct creating a particularized duty owed by the City to plaintiff. Therefore, plaintiff's theory of negligence is premised on the general standard of foreseeability of harm.

"[A] trier of fact must be able to find that there was a reasonably foreseeable risk of harm to the plaintiff[.]" *Fraker v. Benton Cnty. Sheriff's Off.*, 214 Or. App. 473, 490, 166 P.3d 1137 (2007). Foreseeability is ordinarily a fact question for a jury unless the harm results from "the concatenation of highly unusual circumstances" or "an extended sequence of improbable chanced occurrences." *McPherson v. State ex rel. Dep't of Corr.*, 210 Or. App. 602, 613-14, 618, 152 P.3d 918 (2007) (internal quotation marks omitted). Further, if no reasonable juror could find that the kind of harm suffered by the plaintiff was the reasonable result of a defendant's negligent act, then the harm is unforeseeable as a matter of law. *Buchler v. State ex rel. Or. Corr. Div.*, 316 Or. 499, 509, 853 P.2d 798 (1993).

Foreseeability is considered separately from causation because it considers "what prospectively might happen" rather than "what retrospectively did happen." *Fazzolari*, 303 Or. at 13. "It is not necessary that the risk of harm be more probable than not; rather, the question is whether a reasonable person considering the potential harms that might result from his or her conduct would have reasonably expected the injury to occur." *Chapman v. Mayfield*, 358 Or. 196, 206, 361 P.3d 566 (2015) (internal quotation marks omitted); *see Stewart v. Jefferson Plywood Co.*, 255 Or. 603, 609, 469 P.2d 783 (1970) ("[T]he community deems a person to be at fault only when the injury caused by him is one which could have been anticipated because there was a reasonable likelihood that it could happen.").

Here, plaintiff alleges that the officers (1) generally knew that criminals target vacant houses, (2) knew of a possible burglary, (3) missed the cut padlock on the ground, (4) failed to question witnesses and conducted the premises check within eleven minutes, and (5) refused to wait for plaintiff. Further, plaintiff presented evidence that a proper premises check could not be conducted in eleven minutes. Expert Report of Lieutenant Colonel John R. Brown, Ex. 4A, ECF [49], at 3 (concluding that eleven minutes was not "a reasonable period of time to conduct a premises check"). These alleged facts create the implication that the officers knew, or should have known, of the consequences of failing to find Rowland.

As stated above, the foreseeability analysis hinges on "what might happen" because of a defendant's conduct, rather than "what did happen."  A reasonable juror could find that a reasonable police officer would have, or should have, known that failing to conduct a proper, or more thorough, premises check might result in harm to plaintiff.  Further, a reasonable juror could find that a reasonable police officer would have, or should have, known that failing to wait for plaintiff to arrive at the Property might result in harm to plaintiff.  Stated differently, a reasonable juror could find that the officers could have foreseen that plaintiff would be injured if Rowland was still inside the home when plaintiff entered.  Notably, the foreseeability inquiry hinges not on whether the officers could foresee the risk of harm that *actually* occurred, but rather, whether the officers could foresee the risk that *a* harm could occur.

Defendants rely on *Buchler v. State ex rel. Oregon Corrections Division* to argue that plaintiff's intervening action of chasing Rowland made his harm unforeseeable.  316 Or. at 499.  However, defendant's reliance on this case is misguided.  In *Buchler*, the Oregon Supreme Court considered whether the state could be held negligent for the death and serious injury endured by victims of an escaped prisoner. *Id.* at 502.  The prisoner was a member of a work crew in a remote location who escaped in a state van after the crew supervisor left the keys in the ignition.  *Id.*  He drove fifty miles to his mother's house, stole a gun, and, two days after the escape, shot two people, killing one of them.  *Id.*

The plaintiffs claimed that the state had facilitated the harm to the victims by leaving the van's keys in the ignition.  *Id.* at 507.  The court, however, found that that theory of relief charged the defendant with "responsibility for all intervening intentional criminal conduct that might conceivably occur."  *Id.* at 511.  In the court's view, that approach was inconsistent with "a foreseeability analysis that requires that a defendant, to be liable, must have *unreasonably* created the risk of the sort of harm to plaintiff that befell him."  *Id.*  That is, the court found that the "mere 'facilitation' of an unintended adverse result, where intervening intentional criminality of another person is the harm-producing force, does not cause the harm so as to support liability for it."  *Id.* at 511-12.  Therefore, the court held that the harm that the plaintiffs suffered was not a reasonably foreseeable consequence of the risk created by leaving the keys in the van. *Id.* at 514.

14

The Oregon Court of Appeals reviewed *Buchler* and similar cases in *McPherson v. State ex rel. Oregon Department of Corrections*, concluding, "These cases seem to hold that the *criminal* act of a third-party tortfeasor is, as a matter of law, not foreseeable unless the defendant knows or should know of prior crimes by the tortfeasor that are highly similar to the crime at issue." 210 Or. App. at 616 (emphasis added). Defendants in this case appear to be conflating separate ideas to analogize this case to *Buchler*. Although a criminal act occurred in this case, namely Rowland's criminal trespass, the intervening act that defendants assert hindered foreseeability was *plaintiff's* action of chasing Rowland. However, plaintiff's intervening action did not create the risk of harm that was foreseeable. The risk of harm that was reasonably foreseeable to the officers was the general risk that someone within the Property, who the officers did not discover because of the brevity of their premises check, could harm plaintiff.

This conclusion is clearer after comparing the facts of this case to *Buchler*. In *Buchler*, the individuals that the escaped prisoner harmed had no relation to the defendant's action of leaving the keys in the work van. That is, the individuals had no connection to the event that created the risk of harm; thus, the defendant had no way of foreseeing that they could be potential victims of the escaped prisoner. Here, however, defendants knew that plaintiff owned the Property, they knew that he was on his way to the Property, and they knew that there were reports of an unauthorized person entering the Property. Plaintiff was not an attenuated victim that the officers could not reasonably foresee would be harmed if their premises check was improperly conducted. Rather, he was the most obvious potential victim. Therefore, plaintiff has provided sufficient evidence to support the foreseeability element of his negligence claim.

2.    *Causation*

However, plaintiff must still demonstrate that defendants' conduct was the cause-in-fact of his injuries. *Chapman*, 358 Or. at 205; *Or. Steel Mills, Inc.*, 336 Or. at 340 ("A plaintiff, of course, must prove 'factual' or 'but-for' causation—that there is a causal link between the defendant's conduct and plaintiff's harm[.]"). Factual causation "generally requires evidence of a reasonable probability that, but for the defendant's negligence, the plaintiff would not have been harmed." *Joshi v. Providence Health Sys. of Or. Corp.*, 198 Or. App. 535, 538-39, 108 P.3d 1195 (2005), *aff'd*, 342 Or. 152, 149 P.3d 1164 (2006)

(citation omitted). "In negligence cases generally, 'the proof of the material issue of causation must have the quality of reasonable probability, and a mere possibility that the alleged negligence of the defendant was the proximate cause of the plaintiff's injuries is not sufficient.'" *Trees v. Ordonez*, 354 Or. 197, 218, 311 P.3d 848 (2013) (quoting *Sims v. Dixon*, 224 Or. 45, 48, 355 P.2d 478 (1960)) (alterations omitted). "It is well established that the causal connection between the defendant's acts or omissions and the plaintiff's injuries must not be left to surmise or conjecture." *Sims*, 224 Or. at 48.

Under the but-for test, "[t]he defendant's conduct is a cause of the event if the event would not have occurred but for that conduct; conversely, the defendant's conduct is not a cause of the event, if the event would have occurred without it." *Joshi*, 342 Or. at 161 (internal quotation marks omitted). The "but-for" test fails when "two causes concur to bring about an event, and either one of them, operating alone, would have been sufficient to cause the identical result." *Id.* (internal quotation marks omitted). In those cases, the "defendant's conduct is a cause of the event if it was a material element and a substantial factor in bringing it about." *Id.* (internal quotation marks omitted). While intervening criminal activity may be foreseeable under some circumstances, "mere 'facilitation' of an unintended adverse result, where the intervening intentional criminality of another person is the harm-producing force, does not cause the harm so as to support liability for it." *Buchler*, 316 Or. at 511-12.

Defendants argue that plaintiff cannot establish but-for causation because "officers Morales and Mendoza's actions, operating alone, would not have brought about the resulting harm." Defs.' Mot. 22. Relying on *Lamka v. KeyBank*, plaintiff argues that the "altercation with Mr. Rowland was not an intervening third-party act that breaks the causal link element for a negligence claim." 250 Or. App. 486, 281 P.3d 369 (2012), *abrogated by Alfieri v. Solomon*, 358 Or. 383, 365 P.3d 99 (2015); Pl.'s Resp. 3-14. However, *Lamka* is inapplicable to the causation analysis in this case because *Lamka* addressed a foreseeability issue, not causation. *See id.* at 495 (holding that there was no "intervening" criminal act that rendered the harm to plaintiff "*unforeseeable* as a matter of law" and thus situation was not one where a "subsequent act by a third party severs the causal link" (emphasis added)).

Here, plaintiff cannot establish but-for causation. Even if the Court were to assume that

the officers conducted the premises check negligently, that conduct, "operating alone," would not have caused the result that actually occurred.  That is, plaintiff's own choice to chase and engage in a physical altercation with Rowland is what caused his injuries, not defendants' conduct.  Therefore, no genuine issue of material fact exists regarding the cause of plaintiff's injuries; his intervening choice to chase and fight Rowland was the but-for cause of his injuries.

Because plaintiff has not shown that a genuine issue of material fact exists regarding but-for causation, plaintiff's negligence claim cannot survive.  Therefore, summary judgment on plaintiff's negligence claim is GRANTED.

## CONCLUSION

Accordingly, defendant Morales and defendant City of Portland's Motion for Summary Judgment, ECF [42], is GRANTED, and all claims against defendants are DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this 20th day of October, 2023.

Adrienne Nelson
United States District Judge